UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JAMES CRAIG CRISTINI,

          Plaintiff,          Case No. 2:25-cv-10

v.                                  Honorable Jane M. Beckering

UNKNOWN LOMAN et al.,

          Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim for the reasons detailed below. Plaintiff's request for the appointment of counsel (ECF No. 1, PageID.26) will be denied.

**Discussion**

I.     **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility in Ionia, Ionia County, Michigan. The events about which he complains occurred at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. Plaintiff sues the following LMF staff: Prison Counselor Unknown Loman, Correctional Officer Unknown Knoxman, Prison Counselor Unknown Hubble, and Resident Unit Manager Unknown Naeyaert. (Compl., ECF No. 1, PageID.3.)

In Plaintiff's complaint,[1] he alleges that on May 25, 2022, Defendants Loman, Hubble, and Naeyaert "eject[ed]/reject[ed] Plaintiff's re-entry into [the] []R.I. Program (quasi-protective custody) Cedar Unit" after Plaintiff had been found not guilty of two Class II misconduct charges.[2] (*Id.*, PageID.6.)[3] Plaintiff claims that Defendant Loman told Plaintiff that if he had pleaded guilty

---

[1] Plaintiff also filed a "Verified Affidavit of Fact," which reiterates the same allegations that are set forth in the complaint. (ECF No. 1-5.) In light of the repetitive nature of the two documents, the Court only includes citations to Plaintiff's complaint.

[2] In this Opinion, the Court corrects the capitalization and removes the emphasis in quotations from Plaintiff's complaint.

[3] The Court notes that this is not the first lawsuit that Plaintiff has filed regarding the events set forth in the complaint. Plaintiff's prior lawsuit, Action No. 2:24-cv-30, was dismissed without prejudice because Plaintiff failed to file an amended complaint that complied with the Court's instructions in an Order entered on May 16, 2024. *See* Order & J., *Cristini v. Loman*, No. 2:24-cv-30 (W.D. Mich. July 29, 2024), (ECF Nos. 18, 19). Specifically, in Plaintiff's prior action, although his complaint was only about events from a couple of days in an approximately one-month period (i.e., the same dates at issue in the present lawsuit), "Plaintiff's original complaint spanned more than 80 pages, and he also submitted a memorandum in support of his complaint that spanned more than 360 pages." *Id.*, (ECF No. 18, PageID.1187). "In total, Plaintiff's original complaint, supporting brief, and attached exhibits consisted of more than 1000 pages of documents." *Id.*, (ECF No. 18, PageID.1187). The Court provided *pro se* Plaintiff with an opportunity to cure the pleading deficiencies of the original complaint, explaining that Plaintiff's amended complaint had to comply with Rule 8 of the Federal Rules of Civil Procedure, as well as with the Rules of Civil Procedure regarding the proper joinder of claims and parties. *See id.*, (ECF No. 18, PageID.1187–88)

at the hearing, "he surely would have been placed back into" the R.I. Program. (*Id.*, PageID.8.) Plaintiff also claims that Defendant Loman stated: "We do not take kindly to 'not guilty findings' on tickets we personally write[.] . . . [The R.I. Program] is no place for 'legal beagles' who fight misconducts." (*Id.*) Further, Plaintiff claims that as Defendant Loman walked away, he "loudly" stated: "Your [sic] a f[***]ing 'snitch!'" (*Id.*)

On that same date, as Plaintiff was being released from segregation, Plaintiff alleges that Defendant Knoxman "label[ed] Plaintiff a rat/snitch" in front of another inmate, named Platte, who was also being released from segregation. (*Id.*, PageID.9.) Defendant Knoxman said that Plaintiff had "rat[ted] and snitch[ed] on [his] last bunky[]" and that "someone (his next bunky) need[ed] to teach [Plaintiff] a lesson about 'snitching' on bunky's, a lesson [Plaintiff] will never forget." (*Id.*, PageID.9, 10.)

---

(summarizing the procedural history of the case). In response, Plaintiff filed an amended complaint that:

> dropped two previously named Defendants; however, rather than providing "short and plain statement[s] of the claim[s] showing that the pleader is entitled to relief," as the Court had instructed Plaintiff to do in its Order . . ., Plaintiff filed a 55-page amended complaint, which include[d] a substantial amount of legal argument, rather than facts, and the included facts [we]re presented in a largely nonchronological and repetitive format.

*Id.*, (ECF No. 18, PageID.1188). Because Plaintiff had wholly failed to comply with the Court's instructions, the Court dismissed Plaintiff's action without prejudice pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. *Id.*, (ECF No. 18, PageID.1193).

In the present action, Plaintiff names four Defendants and states that he is bringing two claims regarding the events that formed the basis of his original lawsuit. (*See* Compl., ECF No. 1.) Although Plaintiff states that he is bringing two claims, Plaintiff states that he is bringing claims under the First, Eighth, and Fourteenth Amendments, implying that he is bringing at least three claims, not two claims. (*See id.*, PageID.4.) Regardless, even though Plaintiff has reduced the number of Defendants and claims in this action, Plaintiff's complaint is again filled with legal arguments and repetitive facts. Specifically, rather than simply setting forth a chronological narrative of the events in question, Plaintiff's repeatedly describes the same couple of events in his 26-page complaint. Nevertheless, despite these pleading deficiencies, the Court will permit Plaintiff to proceed with the present action.

Ultimately, Plaintiff and Inmate Platte became cellmates when they were released from segregation. (*See id.*, PageID.10.) Plaintiff states that as he and Inmate Platte were unpacking their property into their new cell, Inmate Platte asked: "What did all of [Defendant] Knoxman's[] comments and statements mean?[] Why did []that officer[] put you on blast about being a f[***]ing 'rat' and 'snitch?'" (*Id.*, PageID.11.) In response, Plaintiff told Inmate Platte that he had "just beat two (2) tickets." (*Id.*) Inmate Platte then asked: "What did []Officer Knoxman[] mean when he stated 'you ratted/snitched' on []your last bunky[] in []R.I. (protective custody)[], in order to beat them [sic] two (2) misconducts?[] You know I am a 'gang-member[],' and me and 'my fam,' don't lock with 'rats/snitches.'" (*Id.*) Plaintiff said that he had been in prison for "almost thirty (30) years" and "ain't 'no rat or snitch.'" (*Id.*) Plaintiff states that he "brushed off Platte's comments, as not to give them any energy or traction, to de-escalate." (*Id.*)

From May 25, 2022, through June 21, 2022, Plaintiff and Inmate Platte "had very few[] conversations," "but every now and then Platte kept referencing [Defendant] Knoxman's[] comments." (*Id.*) On June 21, 2022, Inmate Platte came into the cell that he and Plaintiff shared, and threw boiling liquid on Plaintiff, shouting: "F[***] you snitch!" (*Id.*, PageID.12.) Following this attack, Plaintiff was taken to an offsite hospital where he was diagnosed with "first and second-degree burns over 15% of [his] body." (*Id.*, PageID.13.) The emergency room physician advised Plaintiff that he should remain on "complete bed rest for thirty (30) days, so [the] burn wounds could" heal. (*Id.*)

The next day, June 22, 2022, non-party Warden Schroeder came to Plaintiff's cell in segregation, and Plaintiff told Schroeder that the cell "had 'feces[] smeared' all over it," and Plaintiff "was 'afraid of infection.'" (*Id.*, PageID.16.) Warden Schroeder "assured Plaintiff," stating that he would "be moved immediately." (*Id.*, PageID.17.) That same day, Defendant

4

Naeyaert also came to Plaintiff's cell, and Plaintiff told Naeyaert what Warden Schroeder had said. (*Id.*, PageID.19.) In response, Defendant Naeyaert said that "if Warden Schroeder stated that, you can believe it[;] []she[] runs this prison." (*Id.*) Defendant Naeyaert also stated: "[]I have authority []myself[] to move you . . . out of that 'feces-smeared cell' immediately." (*Id.*) Plaintiff told Defendant Naeyaert that he would be filing a grievance and "civil litigation" against the LMF officials "responsible for [Plaintiff's] brutal assault." (*Id.*) On June 24, 2022, Defendant Naeyaert again came to Plaintiff's cell, and Plaintiff advised Naeyaert that Plaintiff had to be transferred since he had been labeled a snitch at LMF. (*Id.*)

Subsequently, on June 28, 2022, during an "unrelated []contraband/[notice of intent] review of 'listed excess personal property,'" Defendant Loman told Plaintiff that Loman intended "to accidentally on purpose destroy/lose/throw away and 'permanently deprive' Plaintiff of his 'personal property' under []Loman's[] sole control . . . because Plaintiff []previously filed [a] grievance against []Loman[] []less than 30 days earlier." (*Id.*, PageID.22.) Plaintiff alleges that Defendant Loman "deprived Plaintiff of . . . 390 physical personal property photographs," which Plaintiff claims that he "legally acquired/obtained and possessed legitimately []without any 'notice' or 'an opportunity to be heard.'" (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution. (*See id.*, PageID.4.) Plaintiff seeks monetary damages. (*See id.*, PageID.25.)

## II.     Request for Appointment of Counsel

When setting forth the relief that he seeks in this action, Plaintiff requests the appointment of counsel. (Compl., ECF No. 1, PageID.26.)

Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992

F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and has determined that, at this time, the assistance of counsel is not necessary to the proper presentation of Plaintiff's position. Plaintiff's request for the appointment of counsel (ECF No. 1, PageID.26) therefore will be denied.

### III.  Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

6

misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     First Amendment Retaliation Claims

Plaintiff alleges that after he was found not guilty of two Class II misconduct charges, Defendants Loman, Hubble, and Naeyaert retaliated against him when they "reject[ed] Plaintiff's re-entry into [the] []R.I. Program (quasi-protective custody) Cedar Unit," and Defendant Knoxman retaliated against Plaintiff when Knoxman "label[ed] Plaintiff a rat/snitch" in front of another inmate. (Compl., ECF No. 1, PageID.6, 9.) Plaintiff also alleges that Defendant Loman confiscated Plaintiff's photographs because Plaintiff "previously filed [a] grievance against []Loman[] []less than 30 days earlier." (*Id.*, PageID.22.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse

7

action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The Court must take Plaintiff's factual allegations as true and in the light most favorable to him. Although Plaintiff has by no means proven his First Amendment retaliation claims against Defendants, the Court will not dismiss these claims at this stage of the proceedings.

### B.  Eighth Amendment Claims

#### 1.  Failure-to-Protect Claims

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833. A prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim; however, he must at least show that he reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety").

In order for a prisoner to state an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993). This

8

standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*; *see also Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011).

### a.     Defendant Knoxman

Plaintiff alleges that Defendant "label[ed] Plaintiff a rat/snitch" in front of Inmate Platte, and that Knoxman said that Plaintiff had "rat[ted] and snitch[ed] on [his] last bunky[]" and that "someone (his next bunky) need[ed] to teach [Plaintiff] a lesson about 'snitching' on bunky's, a lesson [Plaintiff] will never forget." (Compl., ECF No. 1, PageID.9, 10.) Although Plaintiff has by no means proven his claim against Defendant Knoxman, at this stage of the proceedings, the Court will not dismiss Plaintiff's Eighth Amendment failure-to-protect claim against Defendant Knoxman.

### b.     Defendants Loman, Hubble, and Naeyaert

As to Defendants Loman, Hubble, and Naeyaert, Plaintiff alleges that on May 25, 2022, Defendants Loman, Hubble, and Naeyaert "eject[ed]/reject[ed] Plaintiff's re-entry into [the] []R.I. Program (quasi-protective custody) Cedar Unit" after Plaintiff had been found not guilty of two Class II misconduct charges. (*Id.*, PageID.6.) It appears that Plaintiff seeks to hold these Defendants liable for the subsequent attack by his cellmate, Inmate Platte. As explained below, the facts alleged by Plaintiff do not support such a claim.

9

In this action, Plaintiff alleges no facts to suggest that Defendants Loman, Hubble, and Naeyaert knew that Defendant Knoxman had called Plaintiff a "rat/snitch" in front of Plaintiff's new cellmate. And, although Plaintiff alleges that Defendant Loman had said, "Your [sic] a f[***]ing 'snitch,'" at some point while Plaintiff was in segregation on May 25, 2022, Plaintiff alleges no facts to suggest that Loman said this in front of any other inmates, let alone in front of Inmate Platte. (*Id.*)

Plaintiff also alleges no facts to suggest that Defendants Loman, Hubble, and Naeyaert knew that Plaintiff faced *any* risk of harm from his cellmate, let alone that they knew he faced a substantial risk of harm and disregarded it. Indeed, in his complaint, Plaintiff himself admits that "not in a million years[] did [he] think [he] was in []harm's way[] due to [the] 'rat/snitch label.'" (*Id.*, PageID.12.)

Moreover, with respect to Plaintiff's general preference to be housed in the "R.I. Program," which he describes as "quasi-protective custody," Plaintiff alleges no facts about why he sought to be housed in this setting. "[P]risons are inherently dangerous places." *Brown v. Budz*, 398 F.3d 904, 909, 913 (7th Cir. 2005). Without facts about why Plaintiff sought to be placed in protective custody, Plaintiff necessarily fails to show that he faced a substantial risk of harm because he fails to identify any harm that he faced.

Under these circumstances, Plaintiff fails to state Eighth Amendment failure-to-protect claims against Defendants Loman, Hubble, and Naeyaert.

  **2. Conditions of Confinement Claims**

The Eighth Amendment also protects against the denial of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). However, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for

prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In this action, Plaintiff alleges that he advised Defendant Naeyaert that the cell he was in upon his return from the hospital after the attack by Inmate Platte "had 'feces[] smeared' all over it," and that Naeyaert stated, among other things: "[]I have authority []myself[] to move you . . . out of that 'feces-smeared cell' immediately"; but that Naeyaert did not do so. (Compl., ECF No. 1, PageID.16, 19.) Although Plaintiff has by no means proven his claim, at this time, the Court will not dismiss Plaintiff's Eighth Amendment conditions of confinement claim against Defendant Naeyaert.

    **C.**    **Fourteenth Amendment Claims**

        **1.**    **Procedural Due Process**

Plaintiff claims that by confiscating his personal property (i.e., 390 photographs) and denying him a hearing regarding the confiscation of his property, he was deprived of his property without due process of law. (*See id.*, PageID.22.) As explained below, this claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation,

11

while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate. Plaintiff has available to him numerous state post-deprivation remedies. The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff fails to allege any reasons why a state-court action would not afford him complete relief for the deprivations, either negligent or intentional, of his personal property.

Accordingly, Plaintiff fails to state a Fourteenth Amendment procedural due process claim regarding the deprivation of his property and the denial of a hearing regarding the confiscation of his property.

### 2. Substantive Due Process

Without providing any further explanation, Plaintiff references "Due Process (Substantive) Clause" in his complaint. (*See* Compl., ECF No. 1, PageID.7, 24.) To the extent that Plaintiff intended to raise a substantive due process claim regarding the events in the complaint, as explained below, he fails to state such a claim.

"Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard*

*v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

Here, the facts alleged in the complaint fall short of suggesting the sort of egregious conduct that would support a substantive due process claim. *Cf. Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988) (holding that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power"), *overruled in other part by Thaddeus-X*, 175 F.3d at 388; *Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, at *4 (W.D. Mich. Dec. 22, 2016).

Furthermore, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright*, 510 U.S. at 273–75 (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the First Amendment is the applicable constitutional protection for Plaintiff's retaliation claims and the Eighth Amendment is the applicable constitutional protection for Plaintiff's failure-to-protect and conditions of confinement claims.

Accordingly, for the foregoing reasons, any intended Fourteenth Amendment substantive due process claims will be dismissed.

### 3. Equal Protection

In Plaintiff's complaint, he also references "equal protection/treatment," and out of an abundance of caution, the Court construes Plaintiff's complaint to raise a claim under the Equal Protection Clause of the Fourteenth Amendment. (*See* Compl., ECF No. 1, PageID.7, 24.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). And, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Here, Plaintiff fails to allege any *facts* to show that others who were similarly situated were treated differently. Instead, any allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court would reach the same conclusion because Plaintiff's equal protection claims are wholly conclusory, and he has alleged no facts that plausibly show that he was treated differently than others who were similarly situated in all relevant respects.

Accordingly, for these reasons, Plaintiff's Fourteenth Amendment equal protection claims will be dismissed.

### Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis* (ECF No. 2) and will deny Plaintiff's request for the appointment of counsel (ECF No. 1, PageID.26). Having conducted the review required by the PLRA, the Court will dismiss, for failure to state a claim, the following claims against Defendants: Fourteenth Amendment procedural due process claim regarding the deprivation of Plaintiff's property and the denial of a hearing regarding the confiscation of the property, Fourteenth Amendment substantive due process claims, and Fourteenth Amendment equal protection claims. Additionally, the Court will dismiss, for failure to state a claim, Plaintiff's Eighth Amendment failure-to-protect claims against Defendants Loman, Hubble, and Naeyaert. The following claims remain in the case: First Amendment retaliation claims against all Defendants, Eighth Amendment failure-to-protect claim against Defendant Knoxman, and Eighth Amendment conditions of confinement claim against Defendant Naeyaert.

An Order consistent with this Opinion will be entered.


Dated:     March 25, 2025                              /s/ Jane M. Beckering
                                                      Jane M. Beckering
                                                      United States District Judge